Hitchcock, C. I.
The first question submitted to the court for consideration is, whether Thomas Greathouse, one of the original defendants, is before this court. As to him, the bill was dismissed in the court below. From this decree the complainants gave notice of appeal, but they never perfected that appeal. By neglecting so to do, they lost all claim against him, unless the appeal by the defendant, against whom a decree was rendered,' vacates the decree rendered in favor of his co-defendant.
It seems to be supposed that section 6 of the act of March 12, 1845, “ to amend the act to direct the mode of ^proceeding in chancery ” (43 Ohio D. 125), may have some influence upon this subject. That section provides that “ any party to a suit in chancery may appeal his separate part of the suit; in which case, the court from which the appeal is taken, shall direct the amount and condition of the bond on appeal.” I do not suppose that this section has any reference to a case like the one now before the court. That section was intended to provide for difficulties which frequently arose in practice, as to how much of a case was removed by an appeal, where a part of those against whom a decree was entered were satisfied and a part not. In such case the question was often raised whether an appeal by one of the dissatisfied parties vacated the decree, and removed the case as to those who were satisfied. The court generally held, that where there was that intimate connection between the parties, that the rights of one could not be adjudicated without the adjudication of the rights of the others, the appeal of one vacated the whole decree. But in cases not so situated, the decree as against him alone who *435 appealed was vacated. This statute removes all doubt upon the subject.
But in the case now before us, there was a decree against but one of the two defendants, and he appealed. From what? Unquestionably from the decree against himself, not from the decree in favor of his co-defendant. There is no necessary connection between these defendants, so that the right of one can not be determined without deciding upon the rights of the other. We are of opinion that Thomas Greathouse is not before this court.
The bill in this case charges fraud upon Isaac Greathouse in every page, and almost every sentence, but whether any has in fact been committed, must depend entirely upon the evidence, and in truth there seems to be no difficulty as to any question of law.
There are numerous depositions, and without reciting the substance of them, I propose to state rather the conclusion to which our minds are brought by their examination, than to recite the language of the several witnesses.
*It is charged that there was fraud, upon the part of Great-house, in taking out letters of administration, and in his proceedings down to the time of the settlement account filed with the court in 1831; that there was fraud and collusion between him and Allison, in the commencement of the suit by the latter in 1831, and in the failure of the former to make defense to that suit, when he knew that the claim was without foundation, and might be successfully defended against; that there was fraud in Greathouse in not ajoplying the §350.66, found in his hands at the settlement in 1831, to the satisfaction of the judgment recovered by Allison; but, instead thereof, procuring an order of the court to make sale of the real estate to make the payment; that there was fraud in his conduct, after the order of sale was made, in preventing the land from being sold for its true value; and finally, that there was fraud in his employing Lewis to purchase the land for his own use.
The first point made is, that Greathouse conducted fraudulently in procuring letters of administration, and in his proceedings in the settlement of the estate down to the time of filing the account, in 1831.
There is nothing in the evidence to show any improper conduct on the part of Greathouse down to this time. It would seem that his proceedings were in accordance with the laws and customs 'of the country. It is true that the widow states that after the death *436 of her husband she was about to sell the personal property which was left by him and return to Viginia, from whence they had recently removed. That Greathouse advised her that it would not be safe to sell the property without taking letters of administration. That she went with him to court, and the court inquired of her whether she was willing that he should be appointed administrator, and she replied that she was. That she supposed that she was ap ■ pointed administrator with him, and so continued to believe for some considerable length of time; and that when she ascertained it was not so, she thought things were not going as they ought. Now, this is %11 the evidence thero is upon this point, and this falls far short of proof of any misconduct on the part of Greathouse.
The next charge is that there was collusion between Allison and Greathouse; that the latter declined making defense in the suit of the former against him, although he knew that a good and successful defense could have been made. There is much testimony as to the justice of this claim of Allison; and taking the whole into consideration, it is, perhaps, doubtful whether it was just or not. But there is an entire lack of testimony to show that Great-house knew of any defense that could be made. Instead of collusion between him and Allison, the evidence is that there had been no meeting, no correspondence between them until after the commencement of the suit. It is complained of him that he did not correspond with the family, residing in Virginia, upon the subject. The proof shows that one of the guardians of the children was present at the time of the commencement of the suit, so that the family wore not ignorant of its pendency. This suit was not disposed of in that haste which might have been expected had there been any collusion. It was commenced in April, 1831, and judgment entered in October, 1832. The case was defended, as the record (which is made an exhibit) shows, and at the October term, 1832, was submitted to the court on a plea of the general issue and of plene administravit, and the court found that the defendant had fully administered the assets that had come to his hands to be administered, except the sum of §68.45. And a judgment was rendered against the defendant for the sum of §279.64, to be levied of assets that might subsequently come to his hands to be administered.
*437 The charge of fraud, with respect to this judgment, is entirely unsustained by the evidence.
The next charge is that the conduct of Greathouse was fraudu ■ lent in not appropriating the $350.66, found in his hands at the settlement in 1831, to the payment of this judgment; but, instead thereof, procuring an order for the sale of the real estate.
*Tbe sum of sixty-eight dollars forty-five cents, found by the court in his hands, under the plea of plene administravit, was so appropriated. But what became of the balance ? The evidence in the case shows. Previous to that settlement, it had been paid over to the widow and guardian of these complainants, to supply their necessities. It was thus paid over by the advice of counsel, but was not- brought into the account, because not paid subsequent to an order of court. But it was allowed to the administrator on his plea of plene administravit. There can be no -doubt that this money went to the support of the widow and heirs. And those heirs now ask this court, as a court of equity, again to charge the administrator with this sum, because the payment made was not strictly regular. We do not feel inclined to comply with this request.
Another thing should be stated in this connection. At the very time Allison commenced this suit, the guardian was present to receive the balance of this money, and it was only withheld in consequence of the commencement of that suit. The charge of fraud in this particular is not proved.
There is much testimony in the case relative to the value of the land, and great effort is made to show that it was appraised at less than its value, and that Greathouse himself prevented its be» ing sold for its true value. But the evidence shows that the appraisers were judicious and honest men ; that the property was •repeatedly offered, openly and publicly, for sale, and not sold, for want of bidders. There is not a particle of proof to show that Greathouse interfered with the appraisers, or to prevent a sale. In fact, down to the time of sale, we discover nothing in the conduct of the defendant, in the whole case, inconsistent with the character of an honest and an upright man.
But it is charged that when the sale was actually made, the purchase was made for the use and benefit of the defendant. If so, it was wrong, and although he may have acquired the legal title, he could only take it in trust for the complainants, to be trans- *438 erred to them when he should be refunded the amount which, he advanced as a consideration for the land, *in the payment of the judgment against the estate. His situation, as administrator, precluded him from the right to make the purchase.
It is positively denied, however, in the answer, that the purchase by Lewis was made for him or his benefit. The decision of this question must depend upon the proof. It is shown by the evidence, that on October 17, 1834, he, as administrator, conveyed the land to Lewis, the purchaser, for the consideration of $225 ; and that on the very next day, Lewis, by deed of release or quitclaim, conveyed the same to him for the consideration of $226. This is a very suspicious circumstance, nor is the suspicion entirely removed by the circumstance that these deeds were made? months after the land was sold. It is further in proof that Lewis was insolvent, and not in a situation to pay for the land. In addition to this, there is evidence'in the case, both of the declarations of Lewis, who is now dead, made before the execution of the deed, and of the defendant himself, which go strongly to sustain the position that Lewis purchased for the defendant.
Taking all the circumstances, and the testimony in connection therewith, we are satisfied that this sale, although ostensibly to Lewis, was in fact to the defendant himself;-and that as against him the complainants are entitled to relief, unless there is something further in the case to exonerate the defendant.
The defendant, in his answer, insists that long after the land came into his hands he offered the complainants to give it up to them, upon being repaid the amount which he had advanced upon it; but of this there is no proof. On the contrary, John Glass, one of the sons of Robert, testifies that in 1836 or 1837, he offered, in behalf of the heirs, to redeem the land, but that the defendant would not permit it to be done. This witness, although one of the heirs of Robert Glass, is not a party in this case. He, as he says, before the commencement of the suit, transferred his interest in the estate to the complainants, undoubtedly to place himself in a position to be a witness. But his testimony
is sufficient to rebut an allegation in the answer, *which is entirely unsustained, and which, even without this contradiction, could have had no effect.
On the part of the defendant, it is claimed that here has been an acquiescence on the part of the complainants for a great length *439 of time, and that is in fact a stale demand, which should not be enforced in a court of equity. The land was sold in 1834, and at that time most of the complainants were within age. The bill was filed in 1848—fourteen years after the sale. Here was a lapse of fourteen years after the sale. But when it is considered that some of the heirs did not arrive at full age until shortly before the filing of the bill, here has not been that lapse of time which would induce the court to withhold relief.
But a question arises as to the relief which shall be granted. The land has been sold, and, for aught we know, to a bona fide purchaser, without notice, and for a good and valuable consideration. That purchaser who, from aught that appears, now holds the legal title, is not before the court. Under these circumstances no decree can be made for the land. But as the complainants can not have this relief, we think they are entitled to compensation ; and in our opinion, the proper rule of compensation will be to charge the defendant with the value of the land at the time of sale, and credit him with the amount by him paid for it, and which amount was appropriated in part satisfaction of a judgment against the estate.
We take the appraisal as evidence of the value, believing that appraisal to have been made by good and judicious men. Had the defendant sold the land, as it then was, at an advanced price, he might with propriety have been charged accordingly.
The land was appraised at $450; it was sold for $225. The difference is $225, for which, with interest from October 18,1834, the complainants may take a decree. ' The defendant will also be charged with the costs. Decree accordingly.